IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

DEBORAH A. ASHCRAFT,

                              Plaintiff,

            vs.                                    Civil Action No.
                                                   7:05-CV-1342 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

───────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

CONBOY, McKAY LAW FIRM          LAWRENCE HASSELER, ESQ.
307 State Street
Carthage, New York 13619

FOR DEFENDANT:

HON. GLENN T. SUDDABY            WILLIAM H. PEASE, ESQ.
United States Attorney for the      Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL        BARBARA L. SPIVAK, ESQ.
Social Security Administration      Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278              MARLA PIAZZA SIEGEL, ESQ.
                                Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>                        REPORT AND RECOMMENDATION</u>

Plaintiff Deborah Ashcraft has commenced this action seeking

judicial review, pursuant to section 205(g) of the Social Security Act (the

"Act"), as amended, 42 U.S.C. § 405(g), of an administrative

determination denying her applications for Social Security disability

insurance benefits ("DIB") and supplemental security income ("SSI")

payments.  Plaintiff, who suffers principally from degenerative disc

disease and fibromyalgia, asserts that the agency's finding that she is not

disabled, and accordingly does not qualify for Social Security benefits, is

not supported by substantial evidence, and resulted from the improper

rejection of both contrary opinions of her treating physicians and her

testimony regarding the limitations which her conditions impose.  Plaintiff

seeks reversal of the Commissioner's determination and a remand of the

matter to the agency, with a directed finding of disability, for the limited

purpose of calculation of benefits owed to her.

Having reviewed the record before the agency, considered in light of

the controlling deferential standards, I find that ALJ's finding that plaintiff is

not disabled is not supported by substantial evidence, and that his failure

to make a function-by-function analysis of plaintiff's capacity to perform

work functions warrants reversal of the determination.

I.     BACKGROUND

Plaintiff was born in 1954; at the time of the administrative hearing in this matter, she was fifty years of age.  Administrative Transcript at pp. 42, 120.[1]  Ashcraft is divorced, has three adult children, and lives with her fiancé in Carthage, New York.  AT 43, 74, 119-21.  The plaintiff is a high school graduate, and prior to August of 2004 worked as a cashier and a cook.  AT 46, 137, 142-43.

On August 28, 2003 plaintiff suffered a work-related injury when, while lifting a pan of meat weighing approximately seventy to eighty pounds, she slipped and "something snapped" in her neck.  AT 49, 142. In September of 2003, plaintiff sought treatment for her neck condition from Dr. Raymond Walsemann, a chiropractor.   AT 207.  After reviewing x-rays taken on September 15, 2003, *see* AT 209, revealing "[v]ertebral subluxations of atlanto axial complex as well as T2 and T4", Dr. Walsemann placed plaintiff on disability status "until further notice."[2]  AT

_____

[1]     Portions of the administrative transcript (Dkt. No. 5), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence which was before the agency when its decision was made, will be cited hereinafter as "AT ___."

[2]     Although claiming to have had no preexisting back, neck, or shoulder pain prior to the 2003 work-related incident, *see* AT 211, plaintiff had previously seen

207, 209.

The plaintiff was referred by Dr. Walsemann to the North Country Orthopaedic Clinic, where she was initially examined by Dr. Dwight Campbell on October 16, 2003.  AT 211-12.  During that examination, plaintiff complained of pain in the base of her neck, but was able to move her head and neck well, and otherwise generally exhibited good range of motion.  AT 211.  Dr. Campbell's review of x-rays taken on that date revealed only "subtle cervical scoliosis without significant signs of major degenerative disc disease . . . mild calcifications and slight curing of the anterior acromion" in the shoulder area.  AT 212.  While noting his concern regarding the possibility of "systemic arthritis or fibromyalgia," Dr. Campbell recorded as his impression that "there really aren't very specific findings to support [her being out of work] at present".[3]  AT 212.  During a follow-up visit with Dr. Campbell on November 20, 2003, plaintiff again complained of pain and swelling in the base of her neck; noting that there

---

Dr. Walsemann in April of 1992, and again in August, 2002, AT 186-88, 208.  While under Dr. Walsemann's care in 1992 plaintiff was also placed on disability status, although there is no indication of the reason since the portion of disability request form which elicits this information was not completed.  AT 208.

[3]     When Dr. Campbell examined the plaintiff in October of 2003, she advised that she lacked a primary physician to oversee her care.  AT 211.  While Dr. Campbell recommended that the plaintiff obtain one, she refused.  AT 212.

was nothing specifically orthopaedic to keep her out of the workplace, on that occasion Dr. Campbell recommended that Ashcraft undergo an overall medical examination, particularly neurological.  AT 210.

Plaintiff was referred for a neurological examination to Dr. Abdul Latif at North Country Neurology, in light of her complaints of persistent headaches associated with neck and bilateral shoulder pain.  AT 225.  In notes of his initial examination, which occurred on June 1, 2004, Dr. Latif wrote that although plaintiff reported having headaches as a teenager, she had no known history of migrane headaches.  *Id.*  Plaintiff related to Dr. Latif that the headaches had worsened since her injury at work on August 28, 2003.  *Id.*  Plaintiff also advised that her pain is centered in her neck and radiates into her shoulders and across the upper chest wall, with intermittent pain also in her upper arms.  *Id.*  Dr. Latif indicated that during his motor examination of the plaintiff he discerned some giveaway weakness in her upper extremities, and diagnosed plaintiff with cervical neuralgia, with the possibility of cervical radiculopathy and chronic migraine headaches.  AT 226.  Dr. Latif ordered magnetic resonance imaging ("MRI") testing of plaintiff's cervical spine and EMG/NCS testing of the upper extremities, and prescribed the use of Neurontin and physical

therapy.  *Id.*

Plaintiff met with Dr. Latif again on August 2, 2004, expressing continued complaints of severe daily headaches, as well as persistent pain in her neck, and radiating into the shoulders.  AT 261.  The results of Dr. Latif's examination on that occasion were largely unremarkable, although he did record a diagnosis of chronic neck pain, cervical neuralgia, and chronic migraine headaches.  *Id.*

On December 30, 2004, Dr. Latif performed motor nerve conduction testing on the plaintiff, revealing that her right and left median motor nerves and the distal latencies of both her right and left median sensory nerves are moderately prolonged, with normal amplitudes and conduction velocities.  AT 238-39*.*  Dr. Latif also discovered that plaintiff had moderately decreased conduction velocities across her wrists bilaterally, and observed that there was moderate compressive neuropathy of her median motor and sensory nerves across her wrists bilaterally.  *Id.*  At that time Dr. Latif also found evidence of mild C5-6 root irritation on the right side.  *Id.*

Plaintiff was consultatively examined by Dr. David Tiersten, of Industrial Medicine Associates, on July 28, 2004.  AT 229-32.  During that

evaluation, plaintiff complained of constant aching pain in her shoulders and radiating into the arms.  Based upon his examination and x–rays, which revealed minimal narrowing at C4-5, *see* AT 231, Dr. Tiersten diagnosed plaintiff as suffering from herniated cervical and lumbosacral intervertebral discs and determined that she is unable to perform activities that require more than mild prolongation of sitting, standing, walking, carrying, or bending.  AT 231.

Plaintiff underwent rehabilitation therapy for a brief period in late January and February of 2005 under the direction of Dr. Hemanai Sane, of the Carthage Area Hospital Rehabilitation Therapy Department.  AT 263-64.  Plaintiff was referred by Dr. Sane to Dr. Ayaz Khan at the Carthage Area Hospital Pain Clinic, where she received treatment beginning on February 15, 2005.  AT 242.  At that time, plaintiff presented with neck pain and tenderness in the C5-C7 region, as well as the L4-5 region, and additionally with tenderness bilaterally in the knee joints with crepitus over both knees.  AT 245.  Dr. Khan noted that plaintiff exhibited limited ranges of motion and abduction due to her pain.  *Id.*  In his report of a follow-up visit on February 12, 2005, Dr. Khan wrote that although plaintiff's x-rays were basically unremarkable, an ENG report showed

evidence of bilateral median nerve involvement and compression with questionable carpal tunnel syndrome.  AT 249.  Dr. Khan ordered a CT scan examination of plaintiff's lumbar spine on February 23, 2005, the results of which revealed disc space narrowing and vacuum disc phenomenon at the level of L5-S1 consistent with degenerative disc disease and mild degenerative change within the facets of the lower lumbar spine.  AT 240-41.

Although not having worked since August of 2003, and experiencing ongoing chronic head, neck and back pain, plaintiff has managed to engage in a broad range of daily activities.  When completing her disability questionnaire, plaintiff reported that despite her pain she is able to cook dinner daily, wash dishes, go out for short walks or rides, care for various pets, perform household duties including cleaning and laundry, drive occasionally, and grocery shop approximately three times each week.  AT 29, 156-59, 177-78.  Plaintiff is also able to engage in arts and crafts activities, including crocheting and sewing, occasionally goes fishing, plays bingo and attends church weekly.  AT 159-60.

II.     PROCEDURAL HISTORY

    A.     Proceedings Before The Agency

Plaintiff filed applications for DIB and SSI benefits under the Act on June 23, 2004, asserting a disability onset date of August 28, 2003.   AT 120-22, 285-87.  Those applications were denied on August 9, 2004.  AT 93-98, 283.

At plaintiff's request, a hearing was conducted by video conference before ALJ Lawrence E. Shearer on May 4, 2005 in connection with the denial of her application for benefits.  *See* AT 38-90.  Testifying at that hearing were the plaintiff and Jean Hambrick, a vocational expert.  *Id.* Following the hearing, at which plaintiff was accompanied by an attorney and her fiancé, ALJ Shearer rendered a decision dated June 21, 2005. AT 27-37.  In his decision, ALJ Shearer applied the now-familiar five step sequential test for disability, finding at the outset that plaintiff had not engaged in substantial gainful activity since August 28, 2003.  AT 36. Proceeding to step two ALJ Shearer determined, based upon medical and other proof in the record, that plaintiff had demonstrated the existence of medically determinable impairments, including fibromyalgia, degenerative joint disease, and degenerative disc disease, of sufficient severity to restrict her ability to perform basic work activities, but further concluded that those impairments do not meet or equal any of the listed,

presumptively disabling conditions set forth in the applicable regulations,

20 C.F.R. Pt. 404, Subpt. P App 1.[4]

ALJ Shearer next turned to the final two steps of the governing five

part test, which require as a predicate a determination of plaintiff's

residual functional capacity ("RFC").  AT 32.  ALJ Shearer acknowledged

that in affixing appropriate RFC parameters, he must weigh all of plaintiff's

symptoms, including pain, and the extent to which those symptoms can

reasonably be accepted as consonant with the objective medical evidence

and other evidence based on the requirements of 20 CFR §§ 404.1529,

416.929, and Social Security Ruling ("SSR") 96-7p.  *Id.*  After conducting a

survey of the available medical evidence, ALJ Shearer concluded that

plaintiff retains the RFC to perform a full range of medium work, rejecting

plaintiff's assertions of debilitating pain as not entirely credible based upon

a lack of objective support from the medical evidence presented in the

record and plaintiff's statements about her fairly extensive daily activities.[5]

---

[4]     In her appeal, plaintiff does not challenge this portion of the ALJ's determination.

[5]     The governing regulations define medium work as follows:

> Medium work involves lifting no more than 50 pounds at a
> time with frequent lifting or carrying of objects weighing up
> to 25 pounds.  If someone can do medium work, we
> determine that he or she can also do sedentary and light

AT 33.  Affording plaintiff the benefit of the doubt, however, the ALJ nonetheless concluded that the plaintiff would be unable to resume her past relevant work in light of her conditions despite his medium work finding.  AT 37.

At step five of the sequential analysis, ALJ Shearer began by acknowledging the Commissioner's burden at that stage to show the existence of jobs in sufficient numbers in the national economy which the plaintiff is capable of performing.  AT 32.  Applying his RFC finding, ALJ Shearer determined that plaintiff's ability to perform all of the requirements of medium level work may be "impeded by additional exertional and/or non-exertional limitations."  AT 35.  The ALJ therefore opted against resorting to the medical-vocational guidelines (the "grid") set forth in the controlling regulations, 20 C.F.R. Pt. 404, Subpt. P. App. 2, to determine the issue of disability and instead elicited the testimony of a vocational expert concerning whether, despite her limitations, there are significant jobs available in the national economy, either at the light exertion level or within the medium range, with adjustments, which the plaintiff can

_____

work.

20 C.F.R. § 404.1567(c).

perform.  AT 36.  ALJ Shearer accepted the testimony of the vocational

expert and concluded that plaintiff is capable of making a successful

adjustment to available work, and therefore is not "disabled" as defined

under the Act.  AT 36-37.

The ALJ's decision became a final determination of the agency on

October 7, 2005, when the Social Security Administration Appeals Council

denied her request for review of that opinion.  AT 5-7.

B.    This Action

Plaintiff commenced this action on October 24, 2005.  Dkt. No. 1.

Issue was thereafter joined on January 26, 2006 by the Commissioner's

filing of an answer, accompanied by a copy of the administrative transcript

of the evidence and proceedings before the agency.  Dkt. Nos. 4, 5.  With

the filing on March 2, 2006 of plaintiff's brief, Dkt. No. 6, and that on behalf

of the Commissioner on June 19, 2006, Dkt. No. 12, the matter is now ripe

for determination, and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[6]

_____

[6]    This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28,
1998, and recently amended and reissued by Chief District Judge Frederick J. Scullin,

III.   DISCUSSION

A.   Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

---

Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13

F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

   The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d

at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct.

456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

B.     Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a

-16-

severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

     C.    The Evidence In This Case

In support of her challenge to the Commissioner's determination the

plaintiff raises five arguments, asserting that 1) the ALJ failed to properly

consider the medical evidence in the record, and improperly rejected

treating source opinions which are in conflict with his ultimate RFC

findings; 2) at step two of the disability algorythm, the ALJ failed to

properly consider the severity of plaintiff's other limiting conditions,

including herniated discs; 3) the ALJ's RFC finding is not supported by

substantial evidence; 4) the finding of no disability, which rests upon

testimony of the vocational expert, was flawed based upon the failure to

include within the hypothetical posed to the expert additional limitations

beyond those discerned; and 5) the ALJ improperly rejected plaintiff's

subjective testimony regarding the debilitating affects of her medical

conditions.

     1.    Treating Physician

_____Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he

---

[7]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

Plaintiff's treating physician argument is focused upon opinions of Dr. Memanai Sane, who completed an RFC assessment of the plaintiff in February of 2005, in it opining that plaintiff "is totally & permanently disabled."  AT 237.  Plaintiff contends that this opinion should have been afforded greater deference in view of Dr. Sane's alleged status as a treating physician.

The portion of plaintiff's argument related to the ultimate issue of disability is easily discounted.  Dr. Sane's report does not state in what

context, and against what standard of disability, his opinion of disability is given, and in any event addresses a matter which is within the exclusive province of the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

In addition to suffering from this fatal shortcoming, there is another equally compelling reason why Dr. Sane's opinions do not appear to merit treating physician deference.  Dr. Sane's role appears to have been limited to overseeing rehabilitation therapy provided to the plaintiff by Carthage Area Hospital, which plaintiff attended three times per week over a limited period at the end of January, 2005 and the beginning of the following month.  *See* AT 263-64.  Notes of that treatment are skeletal, at best, and provide no indication of Dr. Sane's clinical observations or diagnoses.  Under these circumstances, Dr. Sane's treatment of the plaintiff does not appear to have the requisite longitude and intensity to qualify him as a treating physician under the governing regulations.[8]  *See Sweeney v. Barnhart*, 472 F. Supp. 2d 336, 347 (E.D.N.Y. 2007) (affirming ALJ's determination not to accord controlling weight where the treating

---

[8]    Significantly, plaintiff did not list Dr. Sane as one of her treating sources on her Social Security disability report, filed in July of 2004.  *See* AT 144.

physician had only met with plaintiff five times and treated him for only six months); *Segarra v. Apfel*, 58 F. Supp. 2d 26, 33 (E.D.N.Y. 1999) (discounting physician's findings in part due to the brevity of his two-month treatment relationship with plaintiff).  Accordingly, while not to say that Dr. Sane's opinions regarding plaintiff's actual limitations are wholly irrelevant, it was not error for the ALJ to determine that they were not entitled to controlling weight.[9]

Implicit in the plaintiff's treating physician argument is the contention that opinions of plaintiff's chiropractor, Dr. Walsemann, also should have been given more deference by the ALJ.  It is well-established, however, that the ALJ retains a considerable measure of discretion to determine the appropriate weight to accord a chiropractor's opinion based on all the evidence before him or her, since a chiropractor's opinion is not subject to the treating physician rule.  *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995); *Toro v. Chater*, 937 F. Supp. 1083, 1091-92 (S.D.N.Y. 1996).  In

---

[9]     In his responding brief, the Commissioner surmises that the plaintiff herself may have completed the relevant portions of Dr. Sane's report addressing her limitations.  *See* Commissioner's Memorandum (Dkt. No. 12) at pp. 6-7.  While this may be true, the fact remains that Dr. Sane signed the report, and it is therefore deserving of at least some weight to the extent that it addresses plaintiff's functional limitations.

order to be given controlling weight under the treating physician rule, a treating source's opinion must be a "medical opinion".  20 C.F.R. § 404.1527; *Diaz*, 59 F.3d at 313; *Toro*, 937 F. Supp. at 1091-92.  Under the regulations, however, a chiropractor is not an "acceptable medical source" qualified to give a medical opinion.  *Diaz*, 59 F.3d at 313 (discussing 20 C.F.R. §§ 404.1513(a) and (e)); *Toro*, 937 F. Supp. at 1091-92.  Since a chiropractor cannot provide a medical opinion, chiropractor's opinions are not subject to the treating physician rule, and consequently there is no "hard and fast rule" governing the weight which an ALJ must give a chiropractor's opinion.  *Diaz*, 59 F.3d at 313, 314 n. 8; *Toro*, 937 F. Supp. at 1091-92.

This is not to say that such evidence is meaningless.  Indeed, the regulations do provide that a chiropractor's opinion should be considered for the purpose of assisting the ALJ in understanding how a claimant's impairment affects his or her ability to work.  *Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J. and DiBianco, M.J.) (citing 20 C.F.R. §§ 404.1513(e)(3), 416.913(e)(3)).  Dr. Walsemann's records, however, lend little if any support to plaintiff's arguments.  In his report regarding plaintiff's employability, Dr.

Walsemann found that plaintiff experiences only "some limitation" in his

ability to stand and sit, and found her not to be totally and permanently

disabled.  AT 235.  Under the circumstances, the ALJ's decision not to

accord the views of Dr. Walsemann controlling deference was not error.

### 2.    <u>Subjective Complaints Of Disabling Pain</u>

During the hearing in this matter, plaintiff testified that she

experiences debilitating pain, including daily headaches, aches in her

back, neck and knees, and numbness in her hands.  *See generally* AT 68-

76.  Those complaints were summarily dismissed by the ALJ, without

significant analysis, based upon the extent of plaintiff's "wide range of

daily activities" and the ALJ's perception that plaintiff's pain complaints

were exaggerated and not clinically supported.  AT 34.  In her appeal,

plaintiff maintains that in rejecting her subjective complaints the ALJ failed

to make a proper analysis.

An ALJ must take into account subjective complaints of pain in

making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[10]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated

_____

[10]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

*Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It is clear that the plaintiff appears to suffer from chronic pain of uncertain origin, and that at least one of her physicians has raised fibromyalgia as a probable source of her discomfort.  The fact that the plaintiff suffers from discomfort, however, does not guaranty a finding of disability, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Undeniably, fibromyalgia is now recognized as a potentially severe impairment that may support a claim of disability under the Act, *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2003), and by its very nature, is not always readily susceptible to detection or verification through clinical testing or other objective means.[11]  *See id.*; *see also Cruz v. Apfel,* No. 97 Civ. 1170, 1998 U.S. Dist. LEXIS 23385, at *22-23 (N.D.N.Y. Nov. 4, 1998) (Di Bianco, M.J.), *adopted*, 1998 U.S. Dist. LEXIS

---

[11]      Fibromyalgia is described by a leading medical source as:

[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.  The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites.

Stedmans Medical Dictionary (27th ed. 2000).  Fibromyalgia is also commonly referred to as fibrositis.  *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003).

23384 (N.D.N.Y. Dec. 21, 1998) (Kahn, D.J.).  Addressing the condition,

the Seventh Circuit has explained that:

> fibromyalgia . . . [is] a common, but elusive and mysterious disease, much like chronic fatigue syndrome, with which it shares a number of features.  Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. . . . Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not[.]

*Sarchet v. Chater,* 78 F.3d 305, 306-07 (7th Cir. 1996) (internal citations

omitted).

Despite its elusiveness and potentially debilitating effects,

fibromyalgia, like many other medical conditions, is one which may be, but

is not necessarily, so limiting as to qualify as disabling under the Act. *See*

*Coyle v. Apfel,* 66 F. Supp. 2d 368, 376-77 (N.D.N.Y. 1999) (Hurd, J.).  A

diagnosis of fibromyalgia does not translate into an automatic finding of

disability; it is not the presence of such a medical condition, but rather its limitations, which inform the question of whether or not a plaintiff is under a disability.  *Green-Younger,* 335 F.3d at 108; *Alvarez v. Barnhart*, No. 03 Civ. 8471, 2005 WL 78591, at *2 (S.D.N.Y. Jan. 12, 2005) (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

For this reason it becomes increasingly important for an ALJ, in assessing credibility, to be faithful to the requirements of the controlling regulations as well as SSR 96-7p, which requires him or her, after discerning an underlying physical impairment which could reasonably be expected to produce the symptoms complained of by the claimant, to examine the relevant factors noted in that ruling and to include within the resulting decision a detailed discussion of the impact of those factors on the analysis.  *See Sweatman*, 1998 WL 59461, at *5. In this instance, the ALJ's analysis regarding plaintiff's subjective pain complaints is woefully deficient, and appears to have resulted from his outright rejection of those complaints as exaggerated, in his view, without giving due deference to elusive nature of plaintiff's condition.  Accordingly, I recommend that the ALJ's determination be reversed and the matter remanded for further consideration regarding plaintiff's subjective pain complaints.

### 3.    The ALJ's RFC Finding

Central to the ALJ's conclusion that plaintiff is not disabled are his

findings regarding her RFC.  Plaintiff maintains that the ALJ's RFC

determination is not supported by substantial evidence.

A claimant's RFC represents a finding of the range of tasks he or

she is capable of performing notwithstanding the impairments at issue.  20

C.F.R. § 404.1545(a).  An RFC determination is informed by consideration

of a claimant's physical abilities, mental abilities, symptomology, including

pain, and other limitations which could interfere with work activities on a

regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore

assess plaintiff's exertional capabilities, addressing his or her ability to sit,

stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b),

404.1569a.  Nonexertional limitations or impairments, including

impairments which result in postural and manipulative limitations, must

also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20

C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC

determination, an ALJ must specify those functions which the claimant is

capable of performing; conclusory statements concerning his or her

-30-

capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150

(citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can

withstand judicial scrutiny only if there is substantial evidence in the record

to support each requirement listed in the regulations.  *Martone*, 70 F.

Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10

(E.D.N.Y. 1997).

     The ALJ's RFC finding consists of one paragraph, with scant details,

concluding in essence that plaintiff retains the ability to perform a full

range of work at the medium level of exertion, without consideration of any

postural limitations.  AT 34.  Conspicuously lacking from the ALJ's

determination is any meaningful analysis of the plaintiff's capacity,

including notably any limitations upon her ability to sit, walk and stand.

That determination stands in marked contrast to other evidence in the

record.  In September of 2004, for example, while allowing plaintiff to

return to work, Dr. Walsemann cautioned that plaintiff was to avoid

carrying, pushing, pulling, climbing and stooping or bending, although she

could tolerate lifting up to ten pounds, additionally noting that she is

somewhat limited in her ability to stand and sit.  AT 235.  In his

employability report, Dr. Sane noted a similar lifting and carrying

requirement, and additionally observed that plaintiff was limited in her

ability to walk, stand and sit.  AT 237.  Likewise Dr. David Tiersten, who in

July of 2004 conducted an independent medical examination of the

plaintiff, concluded that she "is unable to perform activities that require

more than mild prolongation of sitting, standing, walking, carrying, or

bending."  AT 231.

     With these reports as a backdrop, it is clear that the ALJ's

determination regarding plaintiff's RFC is deficient, in that it fails to

address these postural limitations.  More significantly, the ALJ's terse

RFC finding fails to conform to the requirements of the governing

regulations, which require a function-by-function analysis.  When making

an RFC determination, an ALJ must specify those functions which the

claimant is capable of performing; conclusory statements concerning his

or her capabilities, simply will not suffice.  *Martone*, 70 F. Supp. 2d at 150

(citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can

withstand judicial scrutiny only if there is substantial evidence in the record

to support each requirement listed in the regulations.  *Martone*, 70 F.

Supp. 2d at 150 (citing *LaPorta*, 737 F. Supp. 180 at 183); *Sobolewski*,

985 F. Supp. at 309-10.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *1 (S.S.A. 1996).

ALJ Shearer's RFC determination, which can be distilled into his belief that plaintiff retains the RFC to perform medium work, without any other restrictions, does not constitute the function-by-function assessment contemplated by SSR 96-8p as well as the applicable regulations.  *See* 20 C.F.R. §§ 404.1545, 416.945.  The Commissioner's determination is therefore subject to reversal on this additional basis as well.

IV.   SUMMARY AND RECOMMENDATION

The ALJ's determination in this matter, finding that plaintiff was not disabled at any of the relevant times, fails to take into consideration plaintiff's subjective pain complaints or to explain why those complaints

-33-

were rejected.  In addition, the ALJ's RFC determination, which serves as

a lynchpin to the finding of no disability, is not supported by substantial

evidence in the record, and further fails to include a function-by-function

analysis of plaintiff's limitations stemming from her diagnosed conditions.

For these reasons, I recommend reversal of the Commissioner's

determination and a remand of the matter to the agency for further

consideration.[12]  Accordingly, it is hereby

    RECOMMENDED that plaintiff's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability VACATED, and the matter REMANDED to the agency for further

consideration.

    NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

---

[12]    Although plaintiff seeks remand solely for the calculation of benefits, such a course of action is not appropriate in this case.  Reversal and remand for the calculation of benefits is only warranted "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)).  Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision.  *See Rosa,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993).

   IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties in accordance with

this court's local rules.


Dated:     June 9, 2008
           Syracuse, NY


David E. Peebles
U.S. Magistrate Judge

-35-